Mr. Worthington, for the defendant, then offered to plead the statute of limitations.

Mr. Key, for the plaintiff, objected that the defendant had no right to plead the statute of limitations to this summary proceeding. The object of the act was to enable the bank to indulge their debtors, without danger of losing their debts by lapse of time. No laches can be imputed to a plaintiff who holds such a power. The note is equivalent to a judgment. The charter only permits defendant to show payments, or that he does not owe the whole of the debt. The defendant can only plead to the merits; and, before he can plead the statute of limitations, he must satisfy the court that it is necessary to the merits. The bank charter, which gives the remedy, does not limit it to any particular time; and this proceeding is not an action within the meaning of the statute of limitations.

Mr. Key urged the case of Ingle v. Hogan upon the court, decided at October term, 1822, [Case No. 6,583.]

THE COURT (CRANCH, Chief Judge, doubting) permitted the defendant to plead the statute of limitations.

---

## Case No. 865.

BANK OF COLUMBIA v. DAWES.

[See Case No. 862.]

---

## Case No. 866.

BANK OF COLUMBIA v. DUNLOP.

[3 Cranch, C. C. 414.] [1]

Circuit Court, District of Columbia. Dec. Term, 1828.

EQUITY—VENDOR AND VENDEE — HE WHO SEEKS EQUITY MUST DO EQUITY.

A vendee coming into equity to obtain the legal title of a lot upon which the purchase-money has been fully paid, must pay the balance due to the vendor upon other lots.

In equity.

CRANCH, Chief Judge, delivered the opinion of the court.

Under the decree of this court for the sale of the real estate of the late James Dunlop, deceased, for the payment of his debts, the trustee sold seventeen feet front on High street, being part of lot No. 88 in H. & B.'s addition to Georgetown. The sales reported by the trustee were all ratified by the court, except this, which was reserved for consideration, upon exceptions to the report filed by the purchaser and by the creditors of Abraham Wingard, who contended that this part of the lot was not the property of the said James Dunlop, but of the said Wingard. The facts were these. In 1803, this part of the lot

---

was sold by the late Mr. James Dunlop to Mr. Abraham Wingard, who paid the whole purchase-money, but did not get a conveyance of the legal title, which remained in Mr. Dunlop, the vendor. In 1814, Mr. Dunlop sold to Mr. Wingard the residue of the lot, being thirty-nine feet front, for $3,000, and received $985 in part payment. In January, 1820, Mr. Wingard died insolvent, not having received the legal title to any part of the lot. Judgments had been recovered against him in his lifetime to a greater amount than the value of all his property. On the 31st of May, 1821, Mr. Dunlop filed a bill against Mr. Wingard's heirs and representatives, for the sale of the thirty-nine feet front, to pay the balance of the purchase-money; and claiming also a lien on the seventeen feet front first sold, in case the other should not be sufficient to pay that balance, which amounted to more than $3,000. A decree was obtained; and, on the 19th of February, 1822, Mr. Dunlop, at the sale under the decree, purchased the thirty-nine feet for $1,350, leaving a large balance of the purchase-money still due to him from Mr. Wingard's estate. On the 10th of October, 1821, Mr. Wingard's creditors obtained a decree for the sale of his real estate, for the payment of his debts; under which decree the trustee offered to sell the seventeen feet, but the sale was forbidden by Mr. Dunlop, on the ground that he had a lien upon it for the balance due upon the other part of the lot, and the sale was not made; but the whole lot, after the death of Mr. Wingard, and after the 19th of February, 1822, remained in the possession of Mr. Dunlop and his heirs. It is agreed, by the trustee for the sale of Mr. Wingard's estate, and by the trustee for the sale of Mr. Dunlop's estate, and by the purchaser, that the sale of the seventeen feet by the latter trustee shall be ratified; and that this court shall decide which of the trustees shall have the purchase-money.

It is one of the plainest rules of equity, that he who seeks equity must do equity. He who comes into a court of equity to redeem, or to obtain the legal title, must pay the defendant all that is justly due to him by the complainant, whether the debt be or be not strictly a lien on the property sought to be redeemed or conveyed; unless the rights of third persons, not having notice of the complainant's equity, shall have intervened. In Shuttleworth v. Laycock, 1 Vern. 245, it was decided, in 1684, that "where there is a debt secured by mortgage, and also a bond debt, when the heir of the mortgagor comes to redeem, he shall not redeem the mortgage without paying the bond debt too, in case the heir be bound. So if there are two mortgages, and one is defective; if he will redeem, he must take both." The same point was decided in Baxter v. Manning, 1 Vern. 244, where the court said:—"Although there is no special agreement proved in this case, that the land should stand as a security for the